## CLAWSON v. UNITED STATES.

### No. 13105.

United States Court of Appeals
Ninth Circuit.

Aug. 28, 1952.

Rehearing Denied Nov. 5, 1952.

Strong & Schwartz, Beverly Hills, Cal., for appellant.

Walter S. Binns, U. S. Atty. Ray H. Kinnison, Bernard B. Laven, Assts., Los Angeles, Cal., for appellee.

Before MATHEWS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

Appellant was charged in an information with failure to file an individual income tax return for the taxable year of 1946 in violation of 26 U.S.C.A. § 145(a). Pertinent portions of that section are set out in the margin.[1] A jury found appellant guilty as charged.

The pertinent facts, briefly stated, are these: In November 1943 appellant purchased a restaurant for $11,000, paying $5300 down, and agreeing to pay the balance in stated monthly installments. He concealed his ownership of the restaurant (and the liquor license appurtenant thereto) by putting them in the name of his stepfather, Waldemar Johanson.[2]

In February 1944, appellant organized "Clawson Enterprises, Inc.," which issued 120 shares of corporate stock. In applying to the Commissioner of Corporations for California, one Charles E. Hicks, represented himself as owner of the restaurant equipment which was being transferred to the corporation for 117 shares of the stock. The 117 shares were put in Hicks' name because, according to appellant, he did not want to have an attachment against him. It is not disputed that Hicks made no claim that he was the owner of the stock; he merely held same in his name for appellant. All of the restaurant equipment was, at the time of incorporation, owned by appellant under the purchase of November 1943.

The supervisory structure of the corporation (Clawson Enterprises, Inc.) was set up as follows: Appellant, Raymond W. Clawson, President and Director; Kathleen Clawson, Vice President and Director; Charles E. Hicks, Secretary and Treasurer; Waldemar Johanson, Director. Although one share each of stock was issued to and in the name of appellant, Waldemar Johanson, and Kathleen Clawson, delivery thereof was never made and the stock remained in the stock book.

Appellant sold all of the corporate assets in March 1946 for $40,000. The corporation thereupon ceased to do business and no Board of Directors meetings were held thereafter. However, subsequent to that date and during 1946, appellant *used* portions of the $40,000 (by drawing checks on the corporate bank account) to pay his rent, life insurance, to purchase clothing, etc. From May to December 1946, the amount of $11,212.05 was thus withdrawn by appellant.

Other sums from the $40,000 proceeds of the sale of corporate assets were spent as follows by appellant:

$9,500.00—purchase of yacht, "Artemus" in March 1946.

8,782.60—improvement on the "Artemus".

12,000.00—paid to appellant's ex-wife

1. "Failure to file returns * * *. Any person required under this chapter * * *, or required by law or regulations made under authority thereof to make a return * * * who willfully fails to * * * make such return * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, * * *."

2. Appellant testified that he did so because he (appellant) had been previously convicted of a felony.

(Phyliss Clawson) to purchase a house and furniture.

The yacht (Artemus) was purchased in the name of appellant's wife. Appellant sold the Artemus in September 1946 for the sum of $57,750, directing the purchaser to make the check therefor payable to him (appellant), explaining that the yacht was in his wife's name for business reasons, but that he (appellant) was the actual owner.

The $57,750 received from the sale of the yacht Artemus was used by appellant, in part, as follows:

$16,750—purchase of the yacht "Conqueror", November 1946.

8,000—repayment of personal loans to Sunset & Vine Loan Co.

11,000—repayment personal indebtedness to Auto Finance Co.

8,000—repayment of personal loans to Markwell & Co.

The foregoing synopsis of the facts is not intended to portray the entire background of this prosecution. Rather it constitutes merely an authoritative resume, in capsule form, of the transactions upon which appellant was convicted.

As we view the matter, the sole question is whether appellant had a gross income of $500 or more for the taxable year 1946. That sums far in excess of the statutory minimum were *received* by appellant during that year is not disputed. Appellant's principal contention, however, is " * * * that any *income* received by a corporation in which appellant had an interest or which he controlled, did not constitute *income* to appellant personally so as to make it obligatory upon appellant to file an individual income tax return." (Emphasis ours) Simply phrased, appellant says that any money received by him was either (a) income to the corporation, rather than to himself, individually, or (b) repayment of loans made by him, or (c) funds to be used by appellant on behalf of the corporation or (d) loans to the appellant by the corporation or by other persons, or (e) funds received by appellant improperly, which were, in fact, the property of the corporation.

It is, of course, true as appellant points out that only *true income* can be considered in determining whether appellant was obliged to file an individual tax return, and that the prosecution has the burden of establishing any money received as being true income. This proposition of law is too familiar to make comment necessary.

That the prosecution successfully carried this burden is made evident by the verdict of the jury, rendered under proper instructions. Appellant contends that there is not sufficient evidence to sustain that verdict. But our examination of the evidence reveals that it would be difficult to find a record which furnishes more solid support for the verdict rendered.

The evidence compels the conclusion that the corporation, created by appellant, was a mere dummy. The fact, and not the form, is decisive. Appellant himself was the real owner of all of its capital stock. He completely controlled the corporation. He commanded the income. The facts before us are reminiscent of, but even stronger than, Currier v. United States, 1 Cir., 1948, 166 F.2d 346, where that court correctly recognized the enterprise as " * * * an essentially individual ownership business * * * being run in a corporate form." From these facts, the jury could properly have found that appellant received constructive dividends which he was under no obligation to repay. Facts adduced to support this theory were alone sufficient to support the verdict of the jury.

But the prosecution's case did not end there. The government introduced other evidence, independent of that previously adverted to, upon which the jury might well have found appellant guilty. This evidence revealed that appellant derived a profit of $20,377.35 from the purchase and sale of the yacht Artemus, both of which events occurred in 1946. The jury was told by the purchaser of the Artemus that appellant directed him to make out the check, in payment therefor, to him (appellant), stating that he was the actual owner, even though the yacht appeared in his wife's name. The jury was free to believe this testimony. It clearly indicated

the receipt of sufficient gross income to necessitate the filing of an individual income tax return for the year 1946.

We have examined the other errors specified by appellant. All of them are without merit. There is no insufficiency in the showing of guilt. The judgment is accordingly affirmed.