William C. SIRAVO, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6847.

United States Court of Appeals First Circuit.

May 15, 1967.

470

James R. McGowan, Providence, R. I., with whom Lester H. Salter and Salter & McGowan, Providence, R. I., were on brief, for appellant.

Alton W. Wiley, Sp. Asst. U. S. Atty., with whom Frederick W. Faerber, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant appeals from judgments of conviction on three counts for wilfully making and subscribing false tax returns in 1958, 1959, and 1960, in violation of 26 U.S.C. § 7206(1),[1] and on one count for wilfully failing to file a tax return in 1961 in violation of 26 U.S.C. § 7203.[2]

Defendant's returns during 1958–1960 showed as income only wages (not exceeding $7,500 in any of the tax years in question) paid by Siravo Motor Sales. In each year the tax due was less than tax withheld and refund was applied for. Evidence at trial showed that during these years defendant operated Trans-Lux Jewelry Co., which assembled jewelry components as a subcontractor for various manufacturers, receiving for this work the following amounts: 1958—$22,242.83; 1959—$28,976.22; 1960—$54,319.47; 1961—$71,362.73.

Defendant made no entry on his form 1040 opposite the heading "profit (or loss) from business from separate Schedule C", nor did he file a separate Schedule C ("Profit (or Loss) From Business or Profession"). He signed the customary declaration.[3]

While the evidence indicated that the defendant's jewelry assembly work must have required a number of people, there was no evidence as to the amount of any

---

1. Section 7206. *Fraud and false statements*

    Any person who—

        (1) *Declaration under penalties of perjury.*—Wilfully makes and subscribes any return, statement or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *

    shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

2. Section 7203. *Willful failure to file return, supply information, or pay tax*

    Any person * * * required by this title or by regulations * * * to make a return * * * or supply any information, who willfully fails to * * * make such return, * * * or supply such information, at the time or times required * * * shall, in addition to other penalties provided by law, be guilty of a misdemeanor and * * * shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

    (Section 6012(a) (1) requires a return to be made by "[e]very individual having for the taxable year a gross income of $600 or more * * *.")

3. "I declare under the penalties of perjury that this return (including any accompanying schedules and statements) has been examined by me and to the best of my knowledge and belief is a true, correct, and complete return."

costs or expenses, whether of materials, labor, or overhead.

The first three counts charged that defendant "did wilfully * * * make and subscribe * * * a * * * tax return * * * which was verified by a written declaration that it was made under the penalties of perjury, and which * * * he did not believe to be true and correct as to every material matter in that * * * he failed and omitted to disclose * * * substantial gross receipts from a business activity * * *."

■■ Defendant's principal contention is that 26 U.S.C. § 7206(1) describes a form of perjury, that a basic requirement of perjury is a false statement of fact, and that failure to attach a separate Schedule C reporting "gross receipts" is neither a constructive misrepresentation of taxable income [4] nor a false statement. He therefore attacks the sufficiency of both the indictment and the evidence. The government denies that section 7206 (1) is a perjury statute and that a false statement of facts is an essential element of this crime. It argues that a violation of the section can consist of the knowing and wilful omission of facts, citing Conford v. United States, 10 Cir., 1964, 336 F.2d 285.

■■ In our view it is unnecessary to resolve this dispute in semantics, for we hold that a return that omits material items necessary to the computation of income is not "true and correct" within the meaning of section 7206. If an affirmative false statement be required, it is supplied by the taxpayer's declaration that the return is true and correct, when he knows it is not. Therefore, the government has made out a violation of the section, whether it be labelled "a perjury statute", Kolaski v. United States, 5 Cir., 1966, 362 F.2d 847, or "similar in nature", Hoover v. United States, 5 Cir., 1966, 358 F.2d 87, cert. denied, 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59.

■■ Our decision is grounded first on the language of the statute. If "true" and "correct" are not to be construed as precisely synonymous, therefore redundant, they must mean something more than that no false figures have been used and that the arithmetic is accurate. In fact, the two terms together are commonly construed as meaning that the document described is both accurate and complete. See, e. g., East Coast Lumber Co. v. Ellis-Young Co., 1908, 55 Fla. 256, 45 So. 826; Collier v. Collier, 1898, 150 Ind. 276, 49 N.E. 1063.[5]

■■ Moreover, we think this construction is necessary to effect the statutory "self-assessing" approach to income taxation. See United States v. Rayor, S.D.Cal., 1962, 204 F.Supp. 486, 491, appeal dismissed as untimely, 9 Cir., 1963, 323 F.2d 519, cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 479. As the Supreme Court said in United States v. Carroll, 1953, 345 U.S. 457, 460, 73 S.Ct. 757, 759, 97 L.Ed. 1147 (dictum), "The code and regulations must be construed in light of the purpose to locate and check upon recipients of income and the amounts they receive." In the context of this case, defendant's contrary construction comes down to this: The return of an employee who earned $10,000 a year and reported only $8,000 would not be "true and correct", while that of a corporation director who reported fees of $5,000 but omitted an accounting for the

---

4. We agree that defendant's return was not such a misrepresentation. But intent to evade taxes is not an element of the crime charged under this section. Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, cert. denied, 1951, 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 (Int. Rev.Code of 1939, § 3809(a)).

5. This effectively disposes of defendant's contention that the jury should have been instructed to disregard the addition of "complete" to "true" and "correct" in the printed declaration that he signed. Although "complete" is superfluous, it does not change the scope of the statutory language, as was the case in Patterson v. United States, 9 Cir., 1910, 181 F. 970 ("sole" added by Patent Office to statutory requirement that patent applicant declare himself "the original and first inventor", thus illegally excluding co-inventors).

receipt of $1,000,000 in rents would be "true and correct". Or, to reverse the pattern in this case, defendant would have to say that a return showing an accounting for a taxpayer's business resulting in a net profit of $7,500 and omitting wage payments of $50,000 would also be "true and correct". We cannot conclude that Congress, in devising "a variety of sanctions for the protection of the system and the revenues", Spies v. United States, 1943, 317 U.S. 492, 495, 63 S.Ct. 364, 87 L.Ed. 418, intended to place such a premium on the telling of half truths.

Defendant argues also that another statute amply covers the wilful omission of information and that the principle of narrow construction of penal statutes compels us not to allow the application of section 7206(1) to defendant. Section 7203 of title 26 creates a misdemeanor for the wilful failure to keep required tax records or supply required information. But the fact that Congress has seen fit to classify wilful failure to supply information as a misdemeanor quite clearly does not preclude it from establishing a felony for falsely swearing under the penalties of perjury that a partial return is a whole one. The structure of sanctions, particularly in the tax field, is not one of mutually exclusive alternatives. See United States v. Rayor, supra, 204 F.Supp. at 489–490. While we respect the principle of narrow construction, we see no ambiguity in the words "true and correct". This is a far cry from the situation in Commissioner of Internal Revenue v. Acker, 1959, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127, where the government sought to parlay a failure to file a declaration of estimated tax into a "substantial underestimate".

The fourth count charged that defendant, having a gross income of $73,209.24 in 1961, wilfully and knowingly failed to file a return. The trial court correctly instructed the jury that total receipts must be reduced by the cost of goods sold and other costs representing a return of capital to arrive at gross income for a manufacturing business, and that, even if the government did not prove the exact amount of income stated in the indictment, it was sufficient if the evidence showed that receipts exceeded cost of goods sold by at least $600. But there was no evidence as to the amount of costs, except the testimony that substantially all materials were supplied by defendant's customers. Defendant argues that since labor costs are part of the cost of goods sold and since there was testimony that the volume of business was impossible for one man to handle, the government has not carried its burden of showing that he did not have labor costs offsetting the proved gross receipts.

We do not agree that the government has any such burden. The applicable rule here is that uniformly applied in tax evasion cases—that evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any. E. g., United States v. Shavin, 7 Cir., 1963, 320 F.2d 308, cert. denied, 375 U.S. 944, 84 S.Ct. 349, 11 L.Ed.2d 273; Swallow v. United States, 10 Cir., 1962, 307 F.2d 81, cert. denied, 1963, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed. 2d 499; United States v. Tadio, 2 Cir., 1955, 223 F.2d 759, cert. denied, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 772; United States v. Stayback, 3 Cir., 1954, 212 F.2d 313, cert. denied, 1955, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714.[6] Indeed, this case is necessarily included in that rule. For in a tax evasion case the government's ultimate burden is to show that the taxpayer received not only gross income but also taxable income, after deduction of capital *and* non-capital expenses. If that is satisfied by proof of

---

6. Of course, when the defendant does offer evidence of offsetting costs, the burden is on the government to persuade the jury that the costs are not allowable. See Small v. United States, 1 Cir., 1958, 255 F.2d 604, 607; cf. Clawson v. United States, 9 Cir., 1952, 198 F.2d 792, cert. denied, 1953, 344 U.S. 929, 73 S.Ct. 495, 97 L.Ed. 715.

sales receipts, absent explanation, so must be the lesser burden here.

Defendant attempts to distinguish the cited cases by tracing them back to United States v. Hornstein, 7 Cir., 1949, 176 F.2d 217, where the defendant had filed a return reporting some income and deductions, and the government proved additional items of income not reported. Defendant's argument is that the rule of *Hornstein* is applicable only in such a case, on the theory that when some deductions are reported the government can rest on the presumption that no others are allowable and thus that all unreported income is taxable. Such a theory may be consistent with the facts of *Hornstein*,[7] but we do not think it accurately reflects the sound considerations involved. The rule we follow here is based on considerations of fairness to both parties and of reasonable access to the relevant evidence. Cf. Morrison v. People of State of California, 1934, 291 U.S. 82, 88–89, 54 S.Ct. 281, 78 L.Ed. 664. To allow the defendant, who can readily keep records that would establish his capital costs, to file no return, however great his receipts, and then challenge the government to prove the amount of those costs, would be effectively to frustrate the purposes of section 7203.

■ Our analysis is not shaken by consideration of our opinion in Winkler v. United States, 1 Cir., 1956, 230 F.2d 766. The only issue expressly addressed in that case was the definition of gross income with respect to a professional gambler. Neither party briefed the question of allocating the burden of producing evidence as to losses. To be sure, our action in reversing the conviction rather than remanding for trial under proper instructions may be read as assuming that the government was bound to show the amount of offsetting losses. Having now faced the issue frontally, we are persuaded of the soundness of our present position and must reject any im-plications stemming from this *sub silentio* assumption.

Defendant's final attack on his count IV conviction is that it was reversible error to allow a special agent, who was absent during the first day of trial, to give his opinion that "in this particular case I would state that the gross income or the gross receipts would be the same figure". This testimony is challenged because it allegedly relied upon hearsay and because it invaded the province of the jury in dealing with an ultimate issue.

■ We do not have here the egregious effort to use a special agent as a conduit for the hearsay testimony of absent witnesses which was presented in Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472; same, 1 Cir., 1961, 295 F.2d 903. Here the manufacturers who paid defendant testified and defendant stipulated that he received the proceeds of the checks in evidence. Cf. Johnson v. United States, 1 Cir., 1963, 325 F.2d 709, 711. The court was careful to exclude testimony by the special agent as to conversations with others. As to the objection to the special agent's opinion above quoted, we observe that not only did he add the qualifying clause "in the absence of inventories and merchandise purchased", but he acknowledged on cross-examination that labor costs also should be deducted from gross receipts in order to arrive at gross income. Under the circumstances, the special agent was merely stating the obvious—the identity of gross receipts and gross income in the absence of evidence of material and labor costs. We find no prejudice to defendant.

■ For similar reasons we find no prejudice in the trial court's use of the term "gross income" in instructing on the first three counts. Admittedly, those counts dealt with failure to report gross receipts; but the conduct of the trial and the court's other instructions made it ade-

7. But see Guzik v. United States, 7 Cir., 1932, 54 F.2d 618 (no indication that reported deductions, if any, had any significance); Oliver v. United States, 7 Cir., 1932, 54 F.2d 48 (defendant's return did not show receipts or deductions, only net income). *Guzik* is cited in *Hornstein*, 176 F.2d at 220.

quately clear that if there was any difference between gross receipts and gross income in this case, the latter must be a smaller figure. Any misapprehension engendered by the instructions complained of could only have benefitted the defendant. The use of the words "gross income", though perhaps error in the context, was not prejudicial.

Affirmed.