SHELDON P. BARR, P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sheldon P. Barr, P.C. v. Commissioner
Docket No. 29648-86
United States Tax Court
T.C. Memo 1988-471; 1988 Tax Ct. Memo LEXIS 490; 56 T.C.M. (CCH) 366; T.C.M. (RIA) 88471; September 28, 1988
Donald Jay Pols and Shlomo Aaron Beilis, for the petitioner Sheldon P. Barr (an officer), for the petitioner. Vallerie Volesko, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 153,269 in petitioner's Federal income taxes for the fiscal year ended February 28, 1983, and an addition to tax under section 6661 [1] in the amount of $ 15,327. By an amendment to answer, respondent determined that petitioner had additional unreported income of $ 340,000, resulting in an increased deficiency. *493 Respondent did not make a timely claim that the addition to tax should be computed at the rate of 25 percent, rather that 10 percent, in accordance with section 8002 of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951. See Pallottini v. Commissioner,90 T.C. 498 (1988). Petitioner has not challenged the determination of the addition to tax under section 6661(a) on any ground other than its claim that there is no tax due and thus petitioner is liable for such addition. After concessions by respondent, the issues for decision are (1) whether petitioner received unreported income of $ 340,000; (2) whether petitioner's taxes are to be computed as those of a member of a brother-sister controlled group which failed to elect the surtax exemption; and (3) whether petitioner is entitled to a pension/profit-sharing deduction of $ 176,767. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner had its principal place of business in Baldwin, New York, at the time it filed its petition. Petitioner
During the year in issue, petitioner was *494 a law corporation owned and operated by Sheldon P. Barr (Barr). Petitioner reported its income tax liability on a cash basis. On February 26, 1982, petitioner adopted the Sheldon P. Barr, P. C. Pension Trust. On June 11, 1982, the Internal Revenue Service issued a favorable determination letter with respect to qualification of the pension trust. Petitioner subsequently filed required forms with respect to the the trust disclosing that only one person, Barr, was eligible for benefits under the plan. Petitioner's primary source of income was collection of client's receivables. On its tax return for the fiscal year ended February 28, 1983, petitioner reported gross income of $ 333,193, comprised of the following: Amount
Source
$   500.00  Telephone Support Services
102,605.41
American Education Publications
434.37
Interest
228,463.62
United Subscriptions Service,
Children's Reading Institute,
Western Publishing, and Interest
536.92
Interest
242.28
Interest
409.50
Interest
$ 333,192.14
Total
Petitioner maintained a special account at Manufacturers Hanover Trust. During *495 the fiscal year ended February 28, 1983, four checks, totaling $ 340,000 and drawn on the account of Enersonics, Inc. (Enersonics), were deposited into petitioner's special account. The four checks from Enersonics were not included in petitioner's reported income for that fiscal year. On its return for the same year, petitioner claimed deductions totaling $ 297,990, including $ 110,000 compensation paid to Barr as the president of the corporation and $ 176,676 for contributions to a pension plan on behalf of Barr. Petitioner did not deduct any amount for salaries or wages paid to other persons. Enersonics
Enersonics maintained a bank account with Chemical Bank. On or about November 22, 1982, documents were presented to Chemical Bank that represented that Enersonics was a Delaware corporation; that Leonard Freedman (Freedman) was the president of the corporation; and that Barr was the secretary of the corporation. On its Form 1120, U.S. corporation Income Tax Return, for the fiscal year ended September 30, 1982, Enersonics reported that its address was 370 Seventh Avenue, New York City; that Freedman and Barr were the officers of the corporation and each devoted part-time *496 to business; and that the corporation had $ 500 in preferred stock outstanding at the end of the year. No deductions were claimed for compensation of officers or other salaries and wages. In response to the request for additional information at item H on the return, the box for "Yes" was checked following the question "Did you at the end of the tax year own, directly or indirectly, 50% or more of the voting stock of a domestic corporation?" Notwithstanding instructions to attach a schedule identifying such corporation, none was attached. No response was given to the question "Did any individual, partnership, corporation, estate or trust at the end of the tax year own, directly or indirectly, 50% or more of your voting stock?"; however, "N/A" was inserted after the instruction to "Enter highest amount owed by you to such owner during the year." The Form 1120 identified Bernstein & Ballin, P.C., as preparers of the return. ALH
In November 1981, the law firm of Barr & Bello filed a Certificate of Incorporation of ALH Energy Management Corp. (ALH). Barr & Bello, 370 Seventh Avenue, New York City, was designated as agent of the corporation upon whom process against it may be *497 served. Filing of the documents was handled by Gerald Weinberg, an attorney in Albany, New York. Kamal Fereg (Fereg) became the president of ALH in 1982. Fereg had immigrated from Egypt in 1979 and held a bachelor's degree in mechanical engineering. He was initially hired by Barr to work for Enersonics, finding locations for energy management systems. When he became president of ALH, Fereg signed checks for the corporation. The checks were prepared in the offices of Barr. Fereg also signed letters for ALH. The letters were usually dictated by Barr or by Freedman. On or about August 5, 1982, Fereg, as president and secretary of ALH, executed a Standard Form of Apartment Lease for premises at 488 Seventh Avenue, New York City. The lease recited that the address of ALH was in care of Barr, 370 Seventh Avenue, and represented that the resolution authorizing execution of the lease by the Board of Directors had been adopted at a meeting held at One Penn Plaza, New York City. A Form 1120 was filed for ALH for the tax year commencing November 4, 1981, and ending September 30, 1982. The return reported the address of ALH as 488 Seventh Avenue, did not identify any officers, *498 did not report any deductions for compensation of officers or other salaries and wages, and reported $ 500 common stock outstanding as of the end of the year. Where the form requested additional information, the box was checked "No" in response to a question about ownership in voting stock of a domestic corporation. There was no response given for the question concerning ownership of ALH voting stock. The return was prepared by Lawrence Kroog, C.P.A. On December 10, 1986, Fereg and ALH pled guilty to indictments brought in the Supreme Court of the State of New York relating to overvaluation of an "energy brain" as part of a tax shelter scheme. During the course of the plea proceedings, Fereg stated that he had signed certain false appraisals at the request of Barr. The following colloquy occurred: THE COURT: And was Mr. Sheldon Barr working in connection with this? DEFENDANT: Yes. THE COURT: What did he do? THE DEFENDANT: Well, he did everything for the operation. THE COURT: He was running the operation? THE DEFENDANT: Yes. THE COURT: Was there a Mr. Leonard Freedman involved? THE DEFENDANT: Yes. He was his partner. On April 30, 1987, after trial, Barr *499 was convicted in the Supreme Court of the State of New York of conspiracy, a scheme to defraud, and grand larceny under the laws of New York. Saxon
Saxon Energy Corp. (Saxon) was incorporated on or about September 22, 1981, by Gerald Weinberg. Ronald Epstein, of Long Beach, New York, was designated the agent for service of process. Archibald Braunfeld (Braunfeld), a certified public accountant, was the president of Saxon. Freedman first asked that Braunfeld act as president of Saxon. Thereafter, Freedman brought Barr to Braunfeld's office and, in the presence of Barr, told Braunfeld that Barr and Freedman "were working together on Saxon." Braunfeld signed checks on Saxon's bank account, signed letters on Saxon's stationery, and met with other individuals on behalf of Saxon. A Form 1120 for the tax year beginning October 1, 1981, and ending August 31, 1982, was filed on behalf of Saxon. The return reported Saxon's address as 21 East 40th Street, New York, reported compensation of $ 10,000 paid to Braunfeld, reported no other salaries and wages paid, and showed common stock issued of $ 100. The boxes for "No" were checked in response to the questions on the form concerning *500 (1) the corporation's ownership of 50 percent or more of the voting stock of a domestic corporation and (2) ownership of 50 percent or more of Saxon's stock by any individual, partnership, corporation, estate or trust. The return was signed by Braunfeld and by an employee of his firm as the preparer. The Issues
In a statutory notice sent April 15, 1986, respondent determined a deficiency based on adjustments to petitioner's taxable income, with explanations including the following: It has been determined that the taxpayer is a member of a brother-sister controlled group who failed to elect the surtax exemption and therefore a zero allocation is made to the four tax brackets below the 46 percent bracket in computing the tax. The entire underpayment of tax for the tax year ended February 28, 1983 is determined to be a substantial underpayment; consequently, the ten percent addition to the tax is charged for the underpayment as provided by section 661(a) of the Internal Revenue Code. * * * It is determined that the deductions shown on your return for the year ended February 28, 1983 have been disallowed because it has not been established that *501 they were incurred, or if incurred, that they were ordinary and necessary business expenses. Therefore, your taxable income is increased in the amount of $ 297,990.00. Your net operating loss carryover claimed in the amount of $ 35,203.00 is disallowed because of lack of substantiation. In the stipulation filed in this case, respondent conceded the net operating loss carryover and all of the deductions other than the pension plan contribution. As to the contribution, the parties stipulated: 14. Petitioner made the following payments to Sheldon P. Barr, as Trustee for Sheldon P. Barr, P.C. Pension Trust: 2/25/83
$ 170,000
2/25/83
1,317
2/25/83
5,450
Total
$ 176,767
OPINION
Unreported Income
Petitioner objected to respondent's motion for leave to file an amendment seeking an increased deficiency based on unreported income represented by the checks from Enersonics deposited into petitioner's bank account. Respondent explained that the motion was late because petitioner had provided the checks in response to discovery and had failed to corroborate a proffered explanation as to why they were not includable in petitioner's income during the *502 year ended February 28, 1983. The motion was granted because petitioner failed to show any prejudice from consideration of the issue. Rule 41(a), Tax Court Rules of Practice and Procedure.
The parties stipulated that the checks were received and deposited to petitioner's account. Petitioner offered no explanation that would negate their characterization as income. Petitioner argues in its brief that the amounts were deposited in a "special account," but it nowhere explains the nature of the special account or why deposits into it are not income. In arguing that respondent has not satisfied his burden of proof, it cites only cases in which the record supported an alternative explanation for the deposits. See, e.g., McSpadden v. Commissioner,50 T.C. 478 (1968). The evidence in this case, including Barr's testimony, establishes that petitioner performed services for Enersonics. The evidence does not support any alternative classification of funds transferred from Enersonics to petitioner other than income. Respondent has satisfied his burden of proof on this issue. Once respondent establishes unexplained gross receipts, his burden of proof is met. See Siravo v. United States,377 F.2d 469, 473 (1st Cir. 1967); *503 United States v. Campbell,351 F.2d 336, 338-339 (2d Cir. 1965); cf. Brooks v. Commissioner,82 T.C. 413, 432-433 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).
Status as a Member of a "Controlled Group"
Shortly prior to trial, respondent claimed, for the first time, that petitioner's pension plan contribution was not deductible because employees of other members of a controlled group including petitioner were not covered by the pension plan. Respondent claims that petitioner has the burden of proof on that issue because, in the statutory notice, respondent disallowed the surtax exemption on the ground that petitioner was a member of a controlled group. Petitioner contends, and the Court agrees, that petitioner's status as a member of a controlled group was not specified as a ground for disallowance of the pension contribution in the statutory notice and would require new evidence, including the identities of and other relevant information concerning employees of all the corporations. In fairness, therefore, respondent should bear the burden of proof on that ground for disallowing the deduction. Achiro v. Commissioner,77 T.C. 881, 890-891 (1981); *504 Estate of Horvath v. Commissioner,59 T.C. 551, 555-557 (1973). While the surtax exemption and pension plan deduction issues each turn on whether or not petitioner is a member of a controlled group, our resolution of neither is affected by the allocation of burden of proof in this instance. Our conclusion, based on the preponderance of the evidence, is that petitioner was not a member of a controlled group. In Achiro v. Commissioner, supra, we considered whether taxpayers had income as a result of disqualification of corporate plans to which contributions had been made on behalf of the taxpayers. Qualification of the plans depended on whether employees of two corporations would be subject to the aggregation rules of section 414(b). We summarized the applicable rules as follows: Section 414(b) [31] requires aggregation of the employees of all corporations which are members of a controlled group of corporations as defined in section 1563(a). Section 1563(a) applies to both parent-subsidiary and brother-sister controlled groups. The brother-sister controlled group determination consists of two tests. Sec. 1563(a)(2). [32] The 80-percent test *505 requires that five or fewer persons alone or in combination have at least an 80-percent interest in each of two or more organizations. [Fn. ref. omitted.] The 50-percent test requires that the same five or fewer persons have more than a 50-percent interest in each organization, taking into account the interests of each person only to the extent that such interests are identical with regard to each organization. *506 We found that the taxpayers' control over the two corporations required aggregation because of a voting agreement executed by the shareholders. Respondent contends that petitioner is a member of a brother-sister controlled group as defined in section 1563(a). According to respondent, the other members of the controlled group are Enersonics, Saxon, and ALH. Respondent's contention is summarized as follows: Based on the evidence Sheldon P. Barr owned at least 80% of either ALH or Saxon Energy or both. Respondent concedes that they have been unable to establish who actually owned the stock of either ALH or Saxon. However, the evidence shows that if Barr did not actually own the stock he would have at least had constructive ownership of the stock. Fereg and Braunfeld, the presidents of ALH and Saxon, respectively, were the only other parties who may have rivalled Barr as to ownership of each corporation. The record supports the contention that they did not control either corporation, Barr controlled them and also each corporation. Respondent next contends that petitioner's pension plan is not a "qualified plan" because "when the members of the sister-brother controlled *507 group are aggregated as required by sec. 414, the plan fails to satisfy I.R.C. secs. 401(a)(3) and 410(b)." Although respondent's brief confuses questions of deductibility to petitioner with taxability to Barr, whose liability is not before us here, implicitly respondent is contending that petitioner has not overcome limitations on deductions set forth in section 404. Neither party has presented evidence from which we can determine who, if anyone, owns stock in Enersonics, ALH, and Saxon. Neither party has presented us with a comprehensive explanation of the respective roles of the corporations, although each party alludes to a tax shelter scheme involving an overvalued energy brain. Neither party has identified Freedman or his role despite references to Freedman by the witnesses and in the documents. Respondent asks that we draw negative inferences against petitioner because Barr did not produce evidence as the the true ownership of the corporations. During the course of this proceeding, respondent moved to compel petitioner to produce documents and answer interrogatories concerning the ownership of the corporations. Respondent's motions were granted. *508 At the time of trial, respondent acknowledged that petitioner had complied with respondent's request. Petitioner's responses to the interrogatories, however, were never made a part of the record. So far as we know, petitioner did provide respondent with useful information, although neither party provided it to the Court. Under these circumstances, we decline to draw any inferences. Barr testified that petitioner was not a member of a controlled group. He specifically denied ever having been a stockholder, officer, or director of ALH, and that he or petitioner ever had any control over funds of ALH or paid moneys to or received moneys from ALH. He denied that either received money from Saxon. Respondent argues that Barr's testimony should be rejected as not credible. Respondent instead asks us to give credence to the testimony of Braunfeld and Fereg, each of whom denied control over or ownership of the corporation of which he was president. Braunfeld and Fereg each contended that administrative matters of the corporations were handled in Barr's law office by persons employed by Barr. They did not say that such persons were employees of petitioner or worked in petitioner's *509 office. At some point, Braunfeld and Fereg each identified other individuals involved in the operations of Saxon and ALH. Braunfeld identified Freedman as the person who asked him to become president of Saxon. Fereg, during a plea proceeding, had asserted that Barr and Freedman were partners. All of the documents in evidence, including tax returns and other writings executed by Braunfeld and by Fereg, corroborate the testimony of Barr and contradict the testimony of Braunfeld and Fereg. [2] These documents in the record reflect different officers, accountants, agents for service of process, and address for the corporations. Barr's law firm had filed corporate papers on behalf *510 of each corporation, and he was the secretary of Enersonics. Such functions are commonly performed by lawyers for clients and do not prove ownership or control. Barr testified that he incorporated ALH at the request of Alexander Lehmann-Haupt (LH). LH was originally the president and sole shareholder of the corporation; LH became ill and transferred control of ALH to a young woman; when the young woman became incapable of running the corporation, ALH was transferred to Fereg. The evidence, particularly by omissions, strongly suggests that no stock was ever issued in the subject corporations. The documentary evidence and the sketchy testimony suggest that a number of individuals, including Barr, Braunfeld, Fereg, and Freedman, jointly controlled a group of corporations. We are not persuaded by the belated denials of responsibility by Braunfeld and Fereg. None of the evidence establishes that Barr owned at least 80 percent in any corporation other than petitioner. The evidence of activities of Braunfeld and Fereg, combined with the evidence that Barr had at least one other "partner," Freedman, tends to negate 80 percent ownership or control in any one person. None of the evidence *511 is sufficient to overcome Barr's categorical testimony. By contrast to the stipulated proof of gross receipts of $ 340,000 in the form of checks received by petitioner from Enersonics, there is no clear evidence to be overcome of ownership of the corporations. We therefore accept Barr's testimony and conclude that petitioner was not a member of a controlled group of corporations within the meaning of section 1563(a). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the year in issue, except as otherwise noted. ↩
31. Sec. 414(b) provides: (b) Employees of Controlled Group of Corporations. -- For purposes of section 401, 408(k), 410, 411 and 415, all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a), determined without regard to section 1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer. * * * ↩
32. Sec. 1563(a)(2) provides: Brother-sister controlled group. -- Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing -- (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation. [77 T.C. at 904-905↩.]
2. During trial, the Court reserved ruling on respondent's Exhibit V, a deposition of Fereg in a civil case, and invited briefing on its admissibility. Respondent does not address that question but proposes findings based on the Exhibit. Petitioner's hearsay objection to the exhibit is sustained. Respondent also proposed findings of fact based on testimony of Fereg that was stricken by the Court on petitioner's objection. Respondent's proposed findings have been stricken by separate order. ↩