T.C. Memo. 2003-148


UNITED STATES TAX COURT


ALBER I. AND GEORGETTE H. SAID, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11202-01.                    Filed May 22, 2003.


Alber I. Said and Georgette H. Said, pro sese.

<u>Nguyen-Hong Hoang</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COHEN, <u>Judge</u>:  Respondent determined deficiencies in, and penalties on, petitioners' Federal income tax liabilities as follows:

| Year | Deficiency | Penalty, I.R.C. Sec. 6663(a) |
|------|-----------|-----------|
| 1993 | $41,582 | $31,187 |
| 1994 | 57,974 | 43,481 |
| 1995 | 346,400 | 259,800 |

After concessions, the issues for decision are: (1) Whether petitioners are entitled to claim additional cost of goods sold of $47,884 for 1995; (2) whether petitioner Alber I. Said (petitioner) is liable for the fraud penalty under section 6663(a) for 1993, 1994, and 1995 or, in the alternative, liable for an accuracy-related penalty under section 6662(a) for the years in issue; and (3) whether petitioner Georgette H. Said (Mrs. Said) is liable for the accuracy-related penalty under section 6662(a) for the years in issue.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Moreno Valley, California, at the time they filed the petition in this case.

Petitioner attended the College of Commerce at the University of Alexandria, Egypt, and obtained a degree in accounting. Petitioner owned and operated a gasoline station,

Mena's Arco (Mena's), in San Bernardino, California, as a sole proprietorship during the years in issue. Mena's sold gasoline and other merchandise such as snacks, lottery tickets, cigarettes, and automotive parts and supplies. Mena's received commissions on repair work completed by third parties. There were two public telephones on Mena's premises that paid Mena's a commission.

Petitioners' Federal Returns

Petitioners filed Form 1040, U.S. Individual Income Tax Return, for 1993 reporting adjusted gross income of $12,282 and taxable income of $0. Petitioners claimed an earned income credit of $1,311. Petitioners filed a Schedule C, Profit or Loss From Business, reporting gross receipts of $4,963,722, expenses of $4,956,469, and a net profit of $7,253 that was reported on their Form 1040.

Petitioners filed a Form 1040 for 1994 reporting adjusted gross income of $14,523 and taxable income of $0. Petitioners claimed an earned income credit of $1,904. Petitioners filed a Schedule C reporting gross receipts of $4,668,333, cost of goods sold of $4,219,896, expenses of $346,907, and a net profit of $15,627 that was reported on their Form 1040.

Petitioners filed a Form 1040 for 1995 reporting adjusted gross income of $15,717 and taxable income of $0. Petitioners claimed an earned income credit of $2,214. Petitioners filed a

Schedule C reporting gross receipts of $3,615,300, cost of goods sold of $3,392,128, expenses of $208,380, and a net profit of $16,912 that was reported on their Form 1040.

Respondent's Examination

Revenue Agent Emmanuel Pascual (Pascual) audited petitioners' returns for all 3 years. Respondent's standard procedure when examining a sole proprietorship engaged in operating a gasoline station involves a field visit of the proprietor's home and business. Pascual drove by Mena's and by petitioners' home prior to contacting petitioners regarding the examination of their returns. Pascual observed that petitioners resided in a two-story home with a three-car garage and that petitioner drove a Mercedes-Benz.

During the examination, petitioners consistently postponed scheduled interviews and appointments with Pascual. Pascual requested from petitioners documentation regarding their income, expenses, and cost of goods sold for Mena's. Petitioners did not provide complete bank records, and Pascual issued summonses to obtain copies of petitioners' personal and business bank statements, canceled checks, and deposit slips. At one point, petitioners' representative told Pascual that petitioners had no personal bank accounts. Pascual found that petitioners did have both business and personal bank accounts, and he obtained copies of bank statements, canceled checks, and deposit slips. Pascual

conducted a bank deposits analysis of petitioners' accounts. After allowing for nontaxable transfers, Pascual determined that petitioners had unreported gross receipts deposited into their bank accounts in each of the years in issue.

Petitioners did not provide complete records of Mena's expenses, instead turning over various incomplete and disorderly receipts and documents. To calculate Mena's cost of goods sold, Pascual relied on two documents provided by petitioners. Pascual reviewed an ARCO Products Company, Product Sales for Customer spreadsheet that indicated how much gasoline was sold to Mena's and a Summary of Items Collected from ARCO Productions Company. Pascual determined the cost of goods sold by calculating the amount of gasoline and other items sold based on these two documents and substantiating invoices.

Pascual also reviewed Mena's daily cash log of gasoline sales for all 3 years. Pascual added the amounts from the log on his adding machine, keeping a copy of the tape and returning the original log to petitioners. Subsequently, petitioners disputed Pascual's tape totals for 1995 and again provided the daily log sheets. Before resubmitting the daily log sheets to Pascual, petitioner altered the amounts on the logs and made erasures.

During the audit, Pascual questioned whether petitioners received gross receipts from automobile repairs. Petitioner told Pascual that Mena's conducted smog checks and engaged in tuneups

and brake services.  Petitioner denied conducting any other major mechanical repair services.  Subsequently, however, petitioner provided Pascual with receipts and invoices for mechanical repair work in order to substantiate Mena's expenses.  When Pascual questioned petitioner regarding the repair work, petitioner took the invoices back from Pascual and told him not to include the invoices in the calculation of expenses.  Petitioner later told Pascual that he received a 10-percent fee for referring Mena's customers for repair work completed by third parties.  Petitioner also did not disclose to Pascual gross receipts from two public telephones located on Mena's property.

On July 10, 2001, respondent sent to petitioners a notice of deficiency listing adjustments for unreported gross receipts and disallowing a portion of the cost of goods sold and of the business expenses.  Respondent also disallowed petitioners' earned income credit for all 3 years.

The petition disputed respondent's determination of cost of goods sold but not the determination of unreported gross receipts.  Petitioner stipulated that he had unreported gross receipts from Mena's in the amounts of $302,550, $579,528, and $561,200 for 1993, 1994, and 1995, respectively.  Respondent concedes that petitioners are entitled to cost of goods sold of $99,251 in 1993 and $336,008 in 1994 in addition to the amounts previously determined, decreasing the deficiency and penalty

amounts reflected in the notice of deficiency.  Respondent also concedes that the initial cost of goods sold that was disallowed in the notice of deficiency for 1995 should be reduced from $260,282 to $47,884.  Respondent also concedes that petitioners are entitled to additional Schedule C expense deductions (in excess of what was initially reported by petitioners) in the amounts of $109,436, $104,690, and $12,155 for 1993, 1994, and 1995, respectively.

## OPINION

### Stipulation of Facts

In the stipulation of facts, petitioners conceded unreported gross receipts for each of the years in issue.  In their brief, however, petitioners claim that they did not stipulate to these amounts and that respondent's counsel told them they had to sign the stipulation prior to trial.  Petitioners have not moved to be relieved from the stipulation or presented grounds that they should not be bound to their admissions.  See Rule 91(e).  We are not persuaded by petitioners' argument and hold that the stipulation remains binding.

### Cost of Goods Sold

Petitioners continue to dispute that respondent incorrectly disallowed $47,884 of petitioners' claimed cost of goods sold for 1995.  Respondent argues that petitioners have failed to

establish their entitlement to any cost of goods sold over the amount conceded by respondent.

Generally, the taxpayer bears the burden of disproving the Commissioner's determination. Rule 142(a). Section 7491 does not apply in this case to shift the burden to respondent because the record shows that the examination of petitioners' returns commenced prior to July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 726, 727. (In any event, petitioner did not retain required records, did not cooperate with reasonable requests for information, and did not introduce credible evidence with respect to his income and deductions.)

The income of a sole proprietorship must be included in calculating the income and tax liabilities of the individual owning the business. Sec. 61(a)(2). The net profit or loss of the business is computed on a Schedule C by subtracting the cost of goods sold and ordinary and necessary business expenses from the gross receipts. Sec. 1.61-3(a), Income Tax Regs. It is a taxpayer's responsibility to maintain adequate books and records sufficient to substantiate all items on the tax return, including the cost of goods sold. See sec. 6001.

Pascual reviewed all documentation that petitioners provided to him to substantiate their cost of goods sold for 1995. Petitioners did not provide evidence to substantiate an amount

larger than that allowed by respondent.  At trial, petitioner offered oral testimony unsubstantiated by documentary evidence to demonstrate additional costs.  See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. 540 F.2d 821 (5th Cir. 1976).  Even the oral testimony was not specific in identifying additional amounts.  On brief, petitioners argue that Pascual miscalculated amounts for all 3 years and that petitioners owe no tax.  The calculations provided in petitioners' brief are not supported by evidence in the record.  Petitioner's claim that he had no taxable income is not credible in the circumstances.  He is entitled to no costs of goods sold or deductions beyond those conceded by respondent.

Fraud Penalty

The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. 99, 102 (1999).  Respondent has the burden of proving, by clear and convincing evidence, an underpayment for the years in issue and that some part of the underpayment for those years was due to fraud.  Sec. 7454(a); Rule 142(b).  If respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as

attributable to fraud and subjected to a 75-percent penalty, unless the taxpayer establishes that some part of the underpayment is not attributable to fraud.  Sec. 6663(b). Respondent must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes.  Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992).  Fraud will never be presumed.  Id.; Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may, however, be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available.  Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Respondent must prove fraudulent intent.  Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including a consistent understatement of income, inadequate records, implausible or inconsistent explanations of behavior, failure to cooperate with tax authorities, and dealing with cash.  Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  A

taxpayer's level of education is a relevant factor.  See
Niedringhaus v. Commissioner, supra at 211; Stephenson v.
Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th
Cir. 1984).

Although respondent must prove an underpayment of tax in
support of the fraud penalty, respondent's burden is met here by
proof of unreported income.  An underpayment will exist where
unreported gross receipts are not exceeded by costs of goods sold
and deductible expenses.  In establishing the underpayment, the
Commissioner may not simply rely on the taxpayer's failure to
prove error in the deficiency determination.  DiLeo v.
Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir.
1992); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Otsuki
v. Commissioner, 53 T.C. 96, 106 (1969).  However, upon clear
proof of unreported receipts, even in a criminal case, the burden
of coming forward with offsetting costs or expenses generally
shifts to the taxpayer.  See Siravo v. United States, 377 F.2d
469, 473-474 (1st Cir. 1967); Elwert v. United States, 231 F.2d
928, 933 (9th Cir. 1956).

Petitioner stipulated that he had unreported gross receipts
for all 3 tax years.  Petitioner has failed to show that the
receipts were offset by deductible costs or expenses.  As a
result, it is established by clear and convincing evidence that
petitioner had an underpayment of tax for each of the years.

Respondent must show that petitioner acted with fraudulent intent. The facts in this case include many "badges of fraud". Petitioner substantially and consistently understated his income for each of the years in issue. Petitioner failed to cooperate with respondent and offered inconsistent explanations for items on the returns. Petitioner did not maintain complete and accurate records of his income-producing activities and did not produce complete records during examination. Even when petitioner produced documents to substantiate the information on the returns, the records were in disarray and were incomplete. In addition, petitioner's business involved many cash transactions. Considering his education as an accountant and the degree of noncompliance with record keeping requirements, we infer an intention to conceal and deceive.

Petitioner, and his representative, also made false and misleading statements to Pascual during the examination. Petitioners' representative told Pascual that petitioners had no personal bank accounts, which later proved to be false. There is also evidence that petitioner attempted to alter records by changing the numbers on his gasoline log sheets in order to claim more costs of goods sold and deductions.

Respondent has proven by clear and convincing evidence an underpayment of tax due to fraud for each year. Petitioner has not proven that any part of the underpayment is not attributable

to fraud.  See sec. 6663(b).  Petitioner consistently made assertions throughout trial and in his brief that are not worthy of belief.  We have no reason to doubt Pascual's credibility.  On consideration of the entire record, we conclude that petitioner is liable for the fraud penalty under section 6663(a).

Accuracy-Related Penalty

Respondent concedes that Mrs. Said is not liable for the fraud penalty under section 6663.  Alternatively, respondent argues that Mrs. Said is liable for the accuracy-related penalty under section 6662(a) for all 3 years.

Under section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax attributable to a substantial understatement of tax or due to negligence or disregard of rules or regulations.  Sec. 6662(b).  Section 6662 shall not apply, however, to any portion of an underpayment subject to the fraud penalty under section 6663.  Id.

The accuracy-related penalty cannot be imposed on one spouse where the other spouse is liable for fraud.  Under section 6663(c), the fraud penalty is imposed on each spouse separately, even when a joint return is filed, whereas the accuracy-related penalty is imposed jointly and severally.  Where a joint return is filed and one spouse is found liable for the fraud penalty, imposing the accuracy-related penalty on the other spouse would

result in "impermissible stacking".  <u>Zaban v. Commissioner</u>, T.C. Memo. 1997-479.  Because petitioner is liable for the fraud penalty on the entire underpayment, Mrs. Said is not liable for the accuracy-related penalty.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under Rule 155</u>.