T.C. Memo. 2006-259

UNITED STATES TAX COURT

WILLIAM LENIHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13764-03.               Filed December 5, 2006.

<u>William Lenihan</u>, pro se.

<u>Frank J. Jackson</u> and <u>Michelle L. Maniscalco</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated May 20, 2003 (the notice), respondent determined a deficiency in petitioner's 2000 Federal income tax of $26,436 and additions to tax of $4,817, $2,248, and $1,121 under sections 6651(a)(1) and (2) and 6654(a), respectively.  Petitioner assigned error to each of those determinations.  Respondent conceded the addition to tax

determined under section 6651(a)(2) and asserted an increase in the addition to tax determined under section 6651(a)(1) of $535 (for a total addition under that section of $5,352). At the close of the trial, respondent made a motion to conform the pleadings to the proof for the purpose of asserting an increased deficiency based on an item of gross income of petitioner's wife (should we determine that petitioner and his wife made a joint return) and certain items of gross income reported on a return respondent received on November 10, 2003 (the Nov. 10 return). The Nov. 10 return reported items of income of which respondent had been unaware when he determined the deficiency shown in the notice. We granted that motion. In his reply brief, respondent concedes that there is no increased deficiency on account of any item of income of petitioner's wife. We accept that concession.

Taking into account various other concessions, the principal issues remaining for decision are the amount of petitioner's gross income, whether petitioner is entitled to any deductions in excess of the standard deduction and a deduction for a personal exemption (and, if so, in what amounts), and the additions to tax under sections 6651(a)(1) and 6654(a).[1]

---

[1] By the amended petition, petitioner claims that the notice does not credit him with an overpayment of taxes from 1999 nor does it reflect the appropriation of petitioner's funds from his account at the Federal Credit Union in 2002. Petitioner filed a brief but failed to propose any facts or make any argument with respect to an overpayment of taxes for 1999 or an

(continued...)

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. For convenience, monetary amounts have been rounded to the nearest dollar. Respondent bears the burden of proof with respect to (1) the items of income shown on the Nov. 10 return that respondent did not take into account in determining the deficiency shown in the notice and (2) the increased section 6651(a)(1) addition to tax, and petitioner bears the burden of proof otherwise, except as provided by section 7491(c). See Rule 142(a).[2]

---

[1](...continued)
appropriation during 2002. If an argument is not pursued on brief, we may conclude that it has been abandoned. E.g., Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003). Therefore, we will treat petitioner as having abandoned those two claims and will not further discuss them.

[2] Sec. 7491(a) shifts the burden of proof to the Secretary with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer if the taxpayer introduces credible evidence with respect to the issue and has (1) complied with the requirements of the Internal Revenue Code to substantiate any item, and (2) maintained all records required by the Internal Revenue Code and cooperated with reasonable requests by the Secretary for information. See sec. 7491(a)(2) (imposing preconditions to the application of the burden-shifting rule found in sec. 7491(a)(1)). On brief, respondent argues that petitioner has failed to satisfy those preconditions. Petitioner has neither responded to respondent's argument nor proposed that we find facts consistent with the conclusion that he has satisfied the stated preconditions. It is petitioner's burden to prove that he has satisfied the preconditions found in sec. 7491(a)(2). See, e.g., Krohn v. Commissioner, T.C. Memo. 2005-145. He has failed to carry that burden, and, therefore,
(continued...)

## FINDINGS OF FACT[3]

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

---

[2](...continued)
sec. 7491(a) is of no application in this case.

[3]  At the outset, we note that, at the conclusion of the trial in this case, the Court set a schedule for opening and answering briefs.  Petitioner filed an opening brief but no answering brief.  Moreover, petitioner's brief fails in certain respects to comply with Rule 151(e), which addresses the form and content of briefs.  Rule 151(e)(3) requires that an opening brief contain proposed findings of fact supported by references to the pages of the transcript or the exhibits or other sources relied on in support of the proposed findings.  Petitioner's brief contains proposed findings of fact but no supporting references of any kind.  In the argument portion of his brief, petitioner makes reference to Petitioner's Exhibits 1, 2, and 3, which the Court is unable to identify and which appear not to be part of the record.  Respondent objects to petitioner's proposed findings of fact in their entirety, except for petitioner's proposed finding No. 1, which relates to a concession made by respondent. Because petitioner has failed to comply with Rule 151(e)(3), the Court will disregard all but petitioner's proposed finding of fact No. 1.  Finally, Rule 153(e)(3) also requires that, in an answering or reply brief, the party set forth any objections, together with the reasons therefor, to any proposed findings of any other party.  Since petitioner failed to file an answering brief, and we have disregarded all but one of petitioner's proposed findings of fact, we must conclude that petitioner has conceded respondent's proposed findings of fact, except to the extent that respondent has failed to direct us to any evidence in the record supporting those proposed findings or those findings are clearly inconsistent with evidence in the record or are inconsistent with petitioner's one proposed finding to which respondent does not object.  See, e.g., Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

Background

At the time he filed the petition, petitioner resided in Delray, Florida.

Petitioner, an attorney, received his law degree from Georgetown University Law School in 1958 and was admitted to practice law in the State of New York in 1959.  He is admitted to practice before the United States Tax Court.

Throughout 2000, petitioner was married.

The Nov. 10 Return

The Nov. 10 return, which, as previously stated, was received by respondent on November 10, 2003, purports to be a joint income tax return for petitioner and his wife for the 2000 taxable (calendar) year (2000).  Respondent had not previously received a return from petitioner for 2000, and, on December 4, 2002, respondent had prepared a substitute 2000 return for petitioner pursuant to section 6020(b).  On November 10, 2003, respondent filed the Nov. 10 return as an amended return. Petitioner did not mail the Nov. 10 return to respondent earlier than November 2003.

Gross Income and Schedule D Proceeds

The parties have stipulated that, in 2000, petitioner received taxable wages, Social Security payments, pension payments, interest, and dividends of $29,327, $14,099, $15,884, $4,482, and $6,238, respectively.

Petitioner reported those items on the Nov. 10 return, and, in addition, (1) on the attached Schedule C, Profit or Loss From Business, he reported $7,848 of gross income from a business described as "consulting", (2) on the attached Schedule D, Capital Gains and Losses, he reported $4,939 of proceeds from sales of capital assets, and (3) on the attached Schedule E, Supplemental Income and Loss, he reported rents and royalties totaling $43,653.

The Hudson Withdrawal

On March 1, 2000, petitioner withdrew $29,996 from Hudson United Bank (the Hudson withdrawal). The statement evidencing the Hudson withdrawal is entitled "IRA WITHDRAWAL STATEMENT", identifies an IRA account in petitioner's name, and describes the account as a "Traditional IRA". During March and April 2000, petitioner deposited $29,996 into a Dreyfus Trust Co. account in his name, described on a transcript of that account as an account "UNDER IRA PLAN".

Schedule A Items

Petitioner did not claim a standard deduction on the Nov. 10 return, but, rather, he deducted the sum of the amounts that he had itemized on a Schedule A, Itemized Deductions, thereto. On the Schedule A, petitioner itemized amounts for medical and dental expenses, State and local income taxes, real estate taxes, personal property taxes, investment interest, cash charitable

contributions, noncash charitable contributions, a casualty loss, unreimbursed employee expenses, and other expenses, of $12,337, $1,708, $9,079, $283, $922, $1,220, $4,341, $256, $1,051, and $330, respectively.

Schedule C Items

On the Schedule C, petitioner described his business activity as "consulting", and he reported business expenses for advertising, car and truck expenses, insurance, legal and professional services, office expenses, supplies, taxes and licenses, travel, meals and entertainment, and other expenses totaling $21,530.

Schedule D Gains

The $4,939 of proceeds from sales of capital assets petitioner reported on the Schedule D is the proceeds from his sales of his interests in Oxford Health Plans (Oxford), Kemper Growth Fund of Spain (Kemper), Ford Motor Co. (Ford), and Citigroup, Inc. (Citigroup), for $3,406, $1,507, $19, and $7, respectively. On the Schedule D, costs or other bases of $2,962 and $1,288 are ascribed to the sales of petitioner's interests in Oxford and Kemper, respectively, giving rise to reported gains on those sales of $444 and $219, respectively. No bases are ascribed to the sales of petitioner's interests in Ford and Citigroup, which were reported as giving rise to gains of $19 and $7, respectively. All four sales were reported as sales of

assets held for more than 1 year.  Petitioner reported on the Schedule D a long-term capital loss carryover from 1999 of $18,742.

Schedule E Items

On the Schedule E, petitioner reported income and expenses from three rental properties and three other investments as follows:

10 Park Ave., Apt. 8-B, New York, NY

| | |
|---|---|
| Rents received | $8,400 |
| Less expenses: | |
| Auto and travel | 148 |
| Cleaning and maintenance | 5,547 |
| Insurance | 182 |
| Depreciation expense or depletion | 2,363 |
| Income (Loss) | 160 |

Delray Racquet Club Condo #4303

| | |
|---|---|
| Rents received | 7,350 |
| Royalties received | 25 |
| Subtotal | 7,375 |
| Less expenses: | |
| Auto and travel | 692 |
| Cleaning and maintenance | 2,831 |
| Commissions | 735 |
| Insurance | 248 |
| Management fees | 221 |
| Repairs | 246 |
| Supplies | 164 |
| Taxes | 2,591 |
| Utilities | 624 |
| Depreciation expense or depletion | 2,125 |
| Income (Loss) | (3,102) |

Delray Racquet Club Condo #9404

| | |
|---|---|
| Rents received | 9,150 |
| Royalties received | 25 |
| Subtotal | 9,175 |
| Less expenses: | |

| | |
|---|---:|
| Auto and travel | 692 |
| Cleaning and maintenance | 2,862 |
| Commissions | 915 |
| Insurance | 248 |
| Management fees | 221 |
| Repairs | 368 |
| Supplies | 492 |
| Taxes | 2,448 |
| Utilities | 624 |
| Depreciation expense or depletion | 2,125 |
| Income (Loss) | (1,820) |

IIC Mortgages
Royalty income received                    14,397

Equity Investments
Royalty income received                    1,705

Inwood Investment Club
Royalty income received                    2,601

## Personal Exemptions

In computing taxable income on the Nov. 10 return, petitioner claimed a deduction for two personal exemptions.

## Taxable Income and Tax

The Nov. 10 return shows taxable income of $33,470 and tax of $5,021.

## 1999 Tax Return

Petitioner filed no Federal income tax return for 1999.

OPINION

I.  Deficiency in Tax

A.  Arguments of the Parties

Petitioner relies on the accuracy of the Nov. 10 return. Except with respect to petitioner's report of capital gain income, respondent agrees with the items of gross income

petitioner reported on the Nov. 10 return.  Respondent argues, however, that petitioner realized additional gross income of $29,996 not reported on the Nov. 10 return on account of petitioner's March 1, 2000, withdrawal of that amount from Hudson United Bank.  Moreover, respondent disagrees with many of the deductions claimed and calculations made on the Nov. 10 return.  Initially, respondent argued that petitioner is not entitled to compute his 2000 income tax liability using the rate schedule for a married couple making a joint return.  Respondent argued that petitioner could not elect joint return status since, to do so, he (and his wife) had to file a return on which they made a joint return election.  Since respondent does not permit a taxpayer to "file" a tax return for a year after respondent has issued the taxpayer a notice of deficiency for the year, respondent argued that petitioner had filed no return for 2000.  Having filed no return for 2000, respondent continued, petitioner could not elect joint return status.  Respondent additionally argued that petitioner was disqualified from making a joint return for 2000 because he failed to include his wife's income on the Nov. 10 return.  In a supplement to brief, respondent conceded those two arguments.  Respondent now accepts that petitioner is entitled to use joint return rates for 2000.  We assume that respondent also accepts petitioner's claim of a deduction for two personal exemptions.  Our analyses of the remaining issues follow.

B. Discussion

1. Stipulated and Reported Items

Section 61(a) provides that gross income means income from whatever source derived. Among the items of gross income specifically enumerated in section 61(a) are compensation for services, interest, dividends, pensions, and gains derived from business and from dealings in property. The wages, social security payments, pension payments, interest, dividends, reported gross income from consulting, and rents and royalties set forth in our findings of fact supra, which either have been stipulated by the parties to be taxable or were set forth on the Nov. 10 return, are all items of gross income for 2000 in the amounts specified.

2. Schedule D Items

a. Agreements and Disagreements

The parties agree that, on account of the sales of his interests in Ford and Citigroup reported on the Schedule D, petitioner realized gains of $19 and $7, respectively. While the parties agree that petitioner made the sales of his interests in Oxford and Kemper reported on the Schedule D, and that he realized gains on account of those sales, they disagree on the amounts of those gains. As we have found, with respect to Oxford, petitioner reported on the Schedule D proceeds of $3,406, cost or other basis of $2,962, and a resulting gain of $444; with

respect to Kemper, he reported proceeds of $1,507, cost or other basis of $1,288, and a resulting gain of $219.  The parties' disagreements over the amounts of petitioner's gains result from their disagreements over his costs of acquiring his interests in Oxford and Kemper.  The parties also disagree with respect to the character of the gains and the availability of a loss carryover.

  b.  Petitioner's Costs of Acquiring His Interests in Oxford and Kemper

To determine gain realized on the sale of property, we must subtract from the proceeds the taxpayer's cost or other basis in the property.  See sec. 1001(a).  Respondent proposes that we find that petitioner had cost bases of zero in his interests in both Oxford and Kemper, so that the gains he realized on the sales of both equaled the proceeds received; viz, $3,406 and $1,507, respectively.  Respondent supports his proposed findings of zero bases by directing us to a one-page joint exhibit, an Internal Revenue Service (IRS) Form 1099-B, Proceeds from Broker and Barter Exchange Transactions, which, among other things, shows gross proceeds of $3,407 and $1,507 from sales of his interests in Oxford and Kemper, respectively, but does not show any cost or other basis for either asset.  While petitioner has made no objection to respondent's proposed findings, he does claim that brokerage statements showing costs and selling prices for those assets were forwarded to respondent, and, in support of that claim, he refers us to the Form 1099-B (which shows nothing

about bases).  At trial, petitioner proffered other documents that he claimed show his costs of acquiring those assets. Respondent objected to the receipt of those documents on the ground that petitioner had violated the Court's standing pretrial order by not providing copies of those documents to respondent. We sustained respondent's objection, and the documents were not received into evidence.  Petitioner did not testify as to his costs of acquiring those assets.  In short, there is no evidence in the record to support petitioner's report on the Schedule D of costs or other bases of $2,962 and $1,288 for his interests in Oxford and Kemper, respectively.  The Nov. 10 return is merely a statement of petitioner's position and is not evidence of the correctness of the figures and information contained therein. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

Respondent bears the burden of proving that petitioner realized gains of $3,406 and $1,507 on the sales of his interest in Oxford and Kemper, respectively.  The amounts petitioner reported on the Schedule D as the proceeds from the sales of those assets were accepted by petitioner at trial and are confirmed by entries on the Form 1099-B.  Respondent has met his burden of proving receipt of those amounts, and we find accordingly.  There is no evidence, however, supporting respondent's claims of zero bases for those assets or from which we would be justified in making any findings with respect to

petitioner's cost bases in those assets. In <u>Waterman v. Commissioner</u>, T.C. Memo. 1990-497, the Commissioner had issued separate notices of deficiency to a husband and a wife (both nonfilers) making adjustments for, among other things, their failures to report gains on their disposition of a jointly owned inventory of paintings held primarily for sale to customers in the ordinary course of the husband's trade or business as an art dealer. We found that their disposition amounted to a sale for $250,000, but we concluded that the record lacked any credible evidence of their joint basis in the paintings. The Commissioner's adjustment was predicated on his claim that their joint gain was $250,000, because their joint basis was zero. While denying that they realized any gain, the taxpayers asserted that their joint basis was $100,000. We stated: "In the absence of evidence upon which to make a finding of fact or a reasonable estimate of petitioners' basis, we must hold against the parties bearing the burden of proof on that issue." Inasmuch as the wife bore the burden of proof in her case, we sustained the Commissioner's claims that the couple's joint basis in the paintings was zero and their joint gain was $250,000. We further held that she had to include in gross income her share of that gain. In the husband's case, however, the Commissioner bore the burden of proof because, in the amended answer, he had changed the year in which he argued the disposition of the paintings had

occurred, which increased the deficiency for that year. See Rule 142(a). While we recognized that the Commissioner had failed to carry his burden of proving that the couple had realized any gain on the sale of the paintings, we treated the taxpayers' assertion that their joint basis was $100,000 as an admission that their joint basis was no greater than that, and we found that the husband had realized a gain to the extent that his share of the $250,000 of proceeds exceeded his share of the admitted $100,000 basis.

We shall likewise accept petitioner's Schedule D entries as admissions that his bases in his interests in Oxford and Kemper did not exceed $2,962 and $1,288, respectively, and that he realized gains on the sales of those two assets of at least $444 and $219, respectively. Moreover, because of petitioner's superior position with respect to access to information as to his bases in those assets, we place on him the burden of coming forward with evidence showing a basis greater than zero in either asset. We are free to do so because we have not invariably held that, when the burden is on the Commissioner to prove that the taxpayer underreported his income from sales, the Commissioner must come forward with evidence showing <u>both</u> unreported receipts <u>and</u> the absence of offsetting costs or deductions above those allowed by the Commissioner. For example, in <u>Franklin v. Commissioner</u>, T.C. Memo. 1993-184, we sustained an addition to

tax for fraud under section 6653(b)(1) on account of the taxpayer's failure to report income from sales of heroin notwithstanding that the Commissioner, who bore the burden of proof because of the claim of fraud, had failed to show that the taxpayer's costs of goods sold and deductible expenses did not exceed his receipts from those sales. We pointed out that, in a merchandising business, gross receipts from sales must be reduced by cost of goods sold to determine gross income from sales. Sec. 1.61-3(a), Income Tax Regs. Indeed, we stated that an underpayment of tax resulting from unreported gross receipts is only possible if those unreported gross receipts are not exceeded by the cost of the goods sold and deductible expenses. We continued:

> Nevertheless, even in criminal tax evasion cases, where the Government bears the greater burden of proof beyond a reasonable doubt, it is well settled--"that evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any." Siravo v. United States, 377 F.2d 469, 473 (1st Cir. 1967). Accord, e.g., United States v. Garguilo, 554 F.2d 59, 62 (2d Cir. 1977); Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956); United States v. Link, 202 F.2d 592, 593 (3d Cir. 1953); United States v. Bender, 218 F.2d 869, 871 (7th Cir. 1955); Bourque v. Commissioner, T.C. Memo. 1980-286 (applying the general rule to cost of goods sold). * * *

We explained that the settled rule was based on the rationale that, in the case of a taxpayer who has not entirely omitted receipts from an activity from his return, it can be presumed that the taxpayer, desiring to minimize his tax, has reported all

his deductions and other offsetting amounts, see, e.g., United States v. Bender, 218 F.2d 869, 871 (7th Cir. 1955), and, in the case of a taxpayer who has failed to file a return or has shown on his return no receipts from the activity, the assumption that he, more readily than the Commissioner, has access to evidence of deductions or other offsetting amounts makes the nonexistence of those amounts a fair presumption, at least as an initial matter and absent a satisfactory explanation of such nonexistence or the production of some exculpatory evidence, Siravo v. United States, 377 F.2d 469, 474 (1st Cir. 1967).

We believe that rationale holds true here. The considerations necessary to determine whether the sale of merchandise (inventory) results in gross income from sales are for present purposes similar to the considerations necessary to determine whether the sale of investment property (which is in question here) results in a gain. In the case of the sale of inventory, there is no gross income unless the proceeds from the sale exceed the cost of the goods sold, sec. 1.61-3(a), Income Tax Regs., and, in the case of the sale of investment property, there is no gain unless the amount realized on the sale exceeds the adjusted basis of the property, sec. 1001(a). The terms "cost of goods sold" and "adjusted basis" are terms of art that denote the same thing; i.e., the measure of the taxpayer's unredeemed investment in an item of property (often the cost of

the property), which, when the item is sold, must be subtracted from the proceeds of the sale in order to determine whether the taxpayer realized any gain from the sale.  Compare, e.g., sec. 1.471-3, Income Tax Regs. ("Inventories at cost.") with secs. 1011(a), 1012.

Clearly, petitioner had documents that might have shown his costs of acquiring his interests in Oxford and Kemper. Petitioner, a lawyer admitted to practice before this Court, offered those documents into evidence, but they were not received because he had failed to comply with our standing pretrial order. It is appropriate that petitioner bear the burden of producing evidence to show that his bases in those assets were greater than zero.  Petitioner having failed to carry that burden, and the Court having no way to reasonably estimate his bases, we conclude that his bases were no greater than zero, and that he realized gains of $3,407 and $1,507 from sales of his interests in Oxford and Kemper, respectively.

### c. Character of Gains

Respondent further argues that the gains on petitioner's interests in Oxford and Kemper, and the gains on petitioner's interests in Ford and Citicorp (totaling $4,939), are all short-term capital gains, since petitioner has failed to prove that any of those gains is attributable to an asset held for more than 1 year.  See sec. 1222(1).  Respondent is correct that there is

nothing in the record showing that petitioner held any of those assets for more than 1 year. As with petitioner's bases in his interests in Oxford and Kemper, we think it appropriate that petitioner bear the burden of producing evidence showing a holding period greater than 1 year. Petitioner has failed to carry that burden, and we conclude that he had no holding period greater than 1 year in his interests in Oxford, Kemper, Ford, or Citicorp.

###### d. Loss Carryover

Petitioner reported on the Schedule D a long-term capital loss carryover (from 1999) of $18,742. Respondent argues that petitioner is entitled to no capital loss carryover since he has failed to prove that he actually suffered any loss entitling him to a capital loss carryover to 2000. Respondent is again correct that there is nothing in the record other than the Nov. 10 return and petitioner's otherwise unsubstantiated testimony showing that he suffered a capital loss that could be carried to 2000. We need not accept a taxpayer's unsubstantiated testimony. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Indeed, respondent's records show that, contrary to petitioner's claim that he filed a return for 1999 on which the claimed loss can be found, he filed no return for 1999. Because of the lack of evidence corroborating his testimony, and the evidence that petitioner filed no return for 1999, we

disbelieve petitioner's testimony that he suffered any loss that could be carried to 2000. We allow no such loss in the computation of the deficiency resulting from this proceeding.

### 3. The Hudson Withdrawal

The parties appear to agree that the Hudson withdrawal, from a qualified retirement account, would be includable in petitioner's gross income unless it was rolled over (i.e., a matching deposit was made) into another qualified retirement account within 60 days. See sec. 408(d)(1), (3) (addressing rollovers of distributions from individual retirement accounts (IRAs)). The principal dispute between the parties appears to be over the date the Hudson withdrawal was made. We have found that it was made on March 1, 2000. We have done so on the basis of the IRA WITHDRAWAL STATEMENT, which, faintly, in the blocks marked "Commencement Date" and "Signatures" carries the notation "3-1-00", which we take to be the date of withdrawal, March 1, 2000. Because the Hudson withdrawal was redeposited in another qualified retirement account within 60 days of that date, petitioner has satisfied the requirements specified in section 408(d)(3) for a tax-free rollover contribution. The Hudson withdrawal is not includable in gross income.

### 4. Schedule C Deductions

On the Schedule C, petitioner described his business as consulting, and he reported expenses for advertising, car and

truck expenses, insurance, legal and professional services, office expenses, supplies, taxes and licenses, travel, meals and entertainment, and other expenses totaling $21,530. The parties have jointly stipulated four exhibits, totaling 55 pages, containing documents that petitioner produced with respect to his claimed Schedule C expenses. Respectively, the four exhibits contain documents that petitioner produced with respect to his claimed Schedule C advertising, car and truck, insurance, travel, and meals and entertainment expenses. Respondent does not stipulate that the documents substantiate the claimed expenses. The documents consist of photocopies of receipts from the U.S. Postal Service, bills with respect to automobile repairs, the faces of personal checks, insurance company bills, airline itineraries, hotel confirmations and bills, a railroad ticket, account statements from an athletic club and a country club, a statement from a financial institution, and other miscellaneous documents. We have examined the documents and, although they indicate that petitioner spent, or at least was billed for, the amounts shown, we cannot conclude that any or all of those amounts were expended in connection with a consulting or any other business activity of petitioner's. Indeed, petitioner has provided no evidence describing any consulting work that he engaged in during 2000.[4] Moreover, in type and amount, the

---

[4] On brief, without reference to anything in the record to
(continued...)

expended or billed amounts are equally consistent with a business purpose and with a personal, living, or family purpose. While trade- or business-connected expenses are deductible, personal, living, and family expenses are not. Compare sec. 162(a) (allowing as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business") with sec. 262 (disallowing, generally, a deduction for "personal, living, or family expenses"). While some of the documents are annotated, e.g., dollar amounts circled or a name appearing next to a country club charge for a restaurant lunch, there is insufficient information on the documents or in petitioner's testimony to show any business connection for any of the expenses. There is, for instance, no evidence to show the business connection of a VISA credit card charge of $209 for an airline ticket. The charge shows no travel date or itinerary and is annotated only "T/E", which we assume stands for "travel and entertainment". Indeed, petitioner has made no attempt to show that he has met the stringent substantiation requirements imposed by section 274 and applicable generally to business-related travel and entertainment expenses. Petitioner has failed to convince us that any of the Schedule C expenses were incurred in

---

[4](...continued)
support the claims, petitioner claims that he has been a financial consultant for over 20 years and, during 2000, was also "in the business of second mortgage placing" and "individual retirement account investments."

connection with a consulting business or any other trade or business carried on by petitioner.  Absent the stringent substantiation requirements imposed by section 274, it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Nevertheless, we must have some basis on which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); see also Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390.  Because the record contains no evidence upon which we could base such an estimate, we conclude that petitioner has failed to prove that he is entitled to deduct any of the expenses reported on the Schedule C.  We allow no deduction for Schedule C expenses in the computation of the deficiency resulting from this proceeding.

### 5.  Schedule E Deductions

At issue is whether petitioner is entitled to any deduction for the expenses set forth in our findings of fact, under the heading "Schedule E Items", in connection with the three rental properties:  10 Park Ave., Apt. 8-B; Delray Racquet Club Condo 4303, and Delray Racquet Club Condo 9404 (together, the three rental properties).  The parties have jointly stipulated an exhibit of 22 pages containing photocopies of bank checks and other items that petitioner produced with respect to his claimed

Schedule E expenses.  Respondent does not stipulate that the documents making up the exhibit substantiate the claimed expenses.  The documents suffer from defects similar to those affecting the documents petitioner produced to substantiate his Schedule C deductions.  Some of the documents seem to have no connection with the claimed expenses at all; others are ambiguous or confusing.  There are, for example, nine pages of copies of checks payable to the order of "200 East 36th St., Owners [or 'Tenants' or something similar]", some of which refer to apartments "8-B" and "4-H", and some of which refer to monthly maintenance.  There is also an IRS Form 1098, Mortgage Interest Statement, for 2000, showing a mortgage interest payment by petitioner of $2,313 to 200 East 36th Owners Corp.  We fail to see the relationship of those checks and that interest payment to the expenses claimed for the three rental properties, none of which seem to involve the address 200 East 36th Street.  There is a receipt for $128 paid for a magazine described as "Financial Planning[,] Elderly Finances", but containing no indication of who made the payment.  There is a receipt from the bookseller Barnes & Noble for something called "Say It In Spanish", which is annotated "Pace U".  There is another partially illegible receipt which is annotated "YMCA".  We fail to see the relevance of those receipts to the claimed expenses.  There are three checks drawn to the order of "Delray Racquet Club" and annotated "4303", but

they appear to be drawn on an account of "Equity Investments", for which no expenses are reported on the Schedule E.  There are other checks to Home Depot and Service America, but they also appear to be drawn on an account of Equity Investments.  There is an IRS Form 1098, showing a mortgage interest payment by petitioner of $739 to 10 Park Ave. Tenants Corp.  Petitioner did not claim any interest expense on the Schedule E with respect to the 10 Park Ave. property.  Nevertheless, on brief, respondent appears to concede the deductibility of that payment.  We accept that concession.  Other than that, we agree with respondent that petitioner has failed to substantiate the expenses he reported in connection with the three rental properties.  We are unable to estimate any such expenses, and, therefore, except with respect to $739 of interest, we shall allow no deduction for Schedule E expenses in the computation of the deficiency resulting from this proceeding.

### 6.  Schedule A Deductions

In computing taxable income, an individual may elect to itemize certain generally personal deductions or claim a standard deduction.  See sec. 63(a) and (b).  The election to itemize is made on the taxpayer's return.  Sec. 63(e).  Similar to his initial argument with respect to joint return status, respondent argues that petitioner filed no return for 2000 and, thus, did not elect to itemize his deductions (and must claim the standard

deduction in lieu of the claimed personal deductions). In support of that argument, respondent refers us to that portion of his opening brief that, by the supplement to brief, he asked us to disregard. We have done so and assume that, at least in this case, respondent has disregarded his argument that petitioner has failed to file a return on which he itemized his deductions. We treat petitioner as having on the Nov. 10 return elected to itemize his deductions.

The parties have jointly stipulated four exhibits containing photocopies of bank checks and other items that petitioner produced with respect to his claimed Schedule A deductions. Respondent does not stipulate that the documents making up the exhibits substantiate the claimed expenses. Those documents, like the ones previously discussed, are, in many respects inadequate to substantiate the expenses claimed. For instance, to substantiate a portion of the amount that petitioner claims he paid as property tax on his Connecticut residence, petitioner offers a check drawn on an account of II Mortgages. In support of his charitable deductions, he offers a check apparently drawn on an account of Equity Investments. Another check, drawn to the order of "Senior Center", is accompanied by no further information. A letter apparently justifying a charitable deduction of $30 states that the $30 is the cost of lunch "[including] an open bar". In support of his claim of a casualty

loss, petitioner offers only a check and a contractor's description of work to be done to install a new driveway. In support of his medical and dental expenses, petitioner offers a pay stub showing deductions that are annotated: "PORTION OF GROSS PAY NOT SUBJECT TO INCOME TAX".

Respondent concedes that petitioner has substantiated payments of State and local taxes, real property taxes, personal property taxes, investment interest expense, and charitable contributions of $220, $6,799, $166, $922, and $300, respectively. Our examination of the documents petitioner provided to substantiate the Schedule A deductions does not allow us to find that he is entitled to deductions in any greater amounts. We accept respondent's concessions and find that petitioner expended the amounts stated for the purposes stated. We shall allow the resulting deductions.

## II. Additions to Tax

### A. Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failing to file a return on or before the specified filing date (in this case, April 16, 2001), unless it is shown that this failure is due to reasonable cause and not due to willful neglect. Reasonable cause may exist if a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return by the date prescribed by law. Sec. 301.6651-1(c)(1),

Proced. & Admin. Regs.  Willful neglect means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent bears the burden of production with respect to the section 6651(a)(1) addition to tax.  See sec. 7491(c).  In order to meet that burden of production, respondent must produce sufficient evidence establishing that it is appropriate to impose the addition to tax.  Once respondent has done so, the burden of proof is upon petitioner, see Higbee v. Commissioner, 116 T.C. 438, 449 (2001), except for the increased portion of the addition to tax asserted by respondent in the answer since, in the answer, respondent concedes that he bears the burden of proof as to that portion of the addition to tax.  Once respondent has met his burden of production and the burden of proof is on petitioner, his burden is to prove that his failure to file a timely 2000 tax return was due to reasonable cause and was not due to willful neglect.  Sec. 6651(a)(1); United States v. Boyle, supra at 245. Where respondent has met his burden of production and the burden of proof does not fall on petitioner, respondent must prove that petitioner's failure to file timely was not due to reasonable cause or was due to willful neglect.  Sec. 6651(a)(1); United States v. Boyle, supra at 245.

Respondent has satisfied his burden of production in that the record establishes that petitioner did not file a 2000 return

before November 2003.  Although he testified that he timely filed his return for 2000 in March of 2001, petitioner offered no certified mail receipt or other evidence to corroborate his testimony.  The parties have stipulated to "a true and complete copy of the tax return submitted by petitioner to respondent for * * * 2000."  The joint exhibit containing that return, which we have referred to as the Nov. 10 return, includes a copy of the front of the wrapper in which the return was mailed to the IRS. The wrapper bears what appears to be a postmark date of November 6, 2003.  The return itself bears a stamp indicating that the IRS received the return on November 10, 2003.  Moreover, respondent's records indicate that no return for 2000 was filed for petitioner until November 10, 2003, when the Nov. 10 return was filed as an amended return.  We have found that petitioner did not mail the Nov. 10 return before November 2003.

Petitioner must establish reasonable cause in order to prevail as to the portion of the addition to tax for which he bears the burden of proof.  Petitioner has failed to present any persuasive evidence establishing that his failure to file that return timely was due to reasonable cause and was not due to willful neglect.  Respondent, in turn, also has failed to introduce any evidence establishing the contrary; i.e., that petitioner's failure to file timely was not due to reasonable cause or was due to willful neglect.  We sustain respondent's

determination as to the addition to tax under section 6651(a)(1) included in the notice, but we hold for petitioner as to the portion of that addition to tax asserted in the answer.

B. Section 6654(a)

Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax. Sec. 6654(a) and (b). Petitioner has assigned error to respondent's determination of a section 6654(a) addition to tax, but he did not in the petition set forth any facts in support of that assignment. The Nov. 10 return does show $7,940 as the sum of (1) 2000 estimated tax payments and (2) the amount applied from petitioner's 1999 return. Petitioner has offered nothing to corroborate that he made any estimated tax payment for 2000 or that any amount was applied from his 1999 return. Indeed, respondent introduced into evidence a transcript of petitioner's accounts for both 1999 and 2000 that, among other things, shows no return filed for 1999 and no payments or credits made during 2000. Without corroboration, we need not accept that petitioner paid any estimated tax. See Wilkinson v. Commissioner, 71 T.C. at 639. Moreover, on brief, petitioner fails to address the section 6654 addition (although he does address the section 6651(a)(1) addition to tax). Because of that failure, we assume that petitioner has abandoned any claim that a section 6654(a) addition to tax is unwarranted. See Greene-Thapedi v.

<u>Commissioner</u>, 126 T.C. 1, 7 n.11 (2006). We therefore sustain respondent's determination of a section 6654(a) addition to tax, adjusted only to take account of petitioner's tax for 2000, as finally determined.[5]

III. <u>Conclusion</u>

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[5] We note that, in connection with computing the "required annual payment" defined by sec. 6654(d)(1)(B), we have held that a return filed after the Commissioner has issued a deficiency notice is not considered to be a "return" for purposes of sec. 6654(d)(1)(B). See <u>Mendes v. Commissioner</u>, 121 T.C. at 324-325.