# United States Tax Court

T.C. Memo. 2024-53

ELIZABETH WHITE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 10218-23L.                                      Filed April 29, 2024.

_____

Elizabeth White, pro se.

*Alexis T. Locklear*, *Victoria E. Cvek*, and *Nancy M. Gilmore*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case petitioner seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy.  The notice relates to petitioner's income tax liability for 2019.  Respondent has filed a Motion for Summary Judgment under Rule 121, contending that there are no disputes of material fact and that the settlement officer (SO) did not abuse his discretion in sustaining the proposed levy.  We agree and accordingly will grant the Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2]                              *Background*

The following facts are based upon the pleadings, the parties' Motion papers, Declarations, and attached Exhibits, which include the Administrative Record of the CDP proceeding along with a Certificate of Genuineness of the Administrative Record. *See* Rule 121(c). Petitioner resided in Maryland when she filed her Petition.

Petitioner filed a delinquent Federal income tax return for 2019. On December 14, 2020, the IRS sent her a "math error" notice. *See* § 6213(b)(1). This notice informed petitioner that her tax for 2019 was being adjusted upward on account of two errors on her return: overstated withholding credits and miscalculation of her taxable Social Security benefits. Although the notice informed petitioner of her right to dispute these adjustments, she did not do so. As of August 2021, her unpaid liability for 2019 (including additions to tax and interest) totaled $6,924; she also had unpaid balances for other tax years.

On August 16, 2021, in an effort to collect petitioner's 2019 liability, the IRS sent her a Notice of Intent to Seize Your Assets and of Your Right to a Hearing (levy notice). This notice stated that it was addressed to petitioner's unpaid liability for the "[t]ax period ending December 31, 2019." She timely requested a CDP hearing.

In her hearing request petitioner checked the box for "Offer in Compromise." She listed the tax periods at issue as "2017–2019," although the levy notice concerned her liability for 2019 only. She indicated that she had recently "paid over $7,000 to settle any taxes owed," referring to $7,141 of payments she had made between September 2019 and January 2020. But as the IRS had informed her in a letter dated January 23, 2020, the IRS had applied the first $2,141 of those payments against her 2017 liability (discharging it in full) and applied the remaining $5,000 against her 2018 liability (reducing but not eliminating that balance due). None of those payments served to reduce her 2019 liability, the subject of the levy notice.[2]

---

[2] Petitioner has also submitted CDP hearing requests relating to her 2015–2018, 2020, and 2021 tax years. But at the time she did so, the IRS had not yet taken or proposed any collection action for any of those years. Taxpayers may request a CDP hearing only in response to a specific notice of collection action. *See* Treas. Reg. § 301.6330-1(a)(3), Q&A-A6; *id.* para. (c)(2), Q&A-C3; *Internal Revenue Manual* 8.22.4.2.2 (Aug. 26, 2020). Petitioner's hearing requests for years other than 2019 are outside the scope of this case and are not before us. *See Andre v. Commissioner*, 127 T.C. 68, 74 (2006).

**[*3]**     On October 3, 2022, the IRS mailed petitioner a letter confirming receipt of her request, advising that it would be forwarded to the IRS Independent Office of Appeals (Appeals). On December 22, 2022, the case was assigned to an SO in Appeals, who reviewed petitioner's account and verified that all requirements of applicable law and administrative procedure had been satisfied. Specifically, he verified that the tax for 2019 had been properly assessed, that notice and demand for payment had been properly mailed to petitioner's last known address, that payments of $7,141 had been properly applied for other tax years, and that petitioner's balance for 2019 remained unpaid.

On December 22, 2022, the SO sent petitioner a letter scheduling a telephone conference for January 18, 2023. The SO informed her that Appeals could consider a collection alternative only if she supplied a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information. If petitioner wished to propose an offer-in-compromise (OIC), she was instructed to submit Form 656, Offer in Compromise.

On January 12, 2023, six days before the scheduled conference call, petitioner spoke with the SO's supervisor and requested copies of the administrative file and other documents. During this conversation petitioner requested a face-to-face (FTF) hearing; the SO's supervisor noted that an FTF hearing might be convened if petitioner submitted a completed Form 433–A to enable consideration of a collection alternative. When petitioner replied that she was not interested in a collection alternative, the supervisor informed her that the conference would take place by telephone, to which she assented. Later that day, the supervisor relayed this information to the SO, who sent petitioner the documents she had requested.

The telephone conference was rescheduled to April 13, 2023. As of that date, petitioner had indicated no intention to challenge her underlying liability for 2019, had proposed no collection alternative, and had submitted no financial documentation. During the call petitioner stated that "she was going to submit another [hearing request] to cover all the years that have balances due." The SO explained that the current hearing was limited to the 2019 tax year. He confirmed the dollar amounts of her balances due for 2015, 2016, 2018, 2020, and 2021 but advised that, before requesting another CDP hearing, "she has to receive final notices for the tax years she wants to discuss."

**[\*4]**   On May 8, 2023, the SO decided to close the case.  Petitioner had not challenged her underlying liability for 2019, had stated that she was not interested in a collection alternative for that year, and had declined to supply the financial information necessary to consider a collection alternative.  On May 23, 2023, Appeals sent petitioner a notice of determination sustaining the proposed levy.  It explained that, although petitioner had checked the box for an OIC, Appeals could not consider that collection alternative because she "did not submit an offer."

Petitioner timely petitioned this Court, asserting that the SO had improperly denied her request for an FTF hearing and had neglected to send her a copy of the administrative file as she had requested.  She did not challenge her underlying tax liability for 2019, apart from asserting that she "had paid the current amount."  She asked that the "current tax year [2019] be held in abeyance until all tax years in which a hearing was requested be brought before the Court."  On February 14, 2024, respondent filed a Motion for Summary Judgment, to which petitioner timely responded.

*Discussion*

I.   *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials.  *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).  Finding that there exist no genuine disputes of material fact, we conclude that summary adjudication is appropriate.

II.   *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked

**[\*5]** out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly in dispute, we review the IRS's determination for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. A taxpayer may challenge her underlying liability at a CDP hearing only if she did not receive a statutory notice of deficiency or did not have a prior opportunity to dispute the liability. *See* § 6330(c)(2)(B); *Montgomery v. Commissioner*, 122 T.C. 1, 9 (2004).

Petitioner did not receive a statutory notice of deficiency with respect to her 2019 tax liability but rather received a "math error" notice. We generally lack deficiency jurisdiction to review adjustments relating to mathematical errors. *See* § 6213(b)(1). But we have held that we may, in a CDP case, review underlying liabilities arising from adjustments not subject to our deficiency jurisdiction. *See McNeill v. Commissioner*, 148 T.C. 481, 489 (2017).

In determining whether the taxpayer had an opportunity to dispute her underlying liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E2. Liabilities stemming from mathematical errors are not generally subject to deficiency procedures. *See* § 6213(b)(1). Thus, we assume arguendo that petitioner could have challenged her 2019 liability at the CDP hearing. *See* § 6330(c)(2)(B); *Montgomery*, 122 T.C. at 9.

To preserve an underlying tax liability challenge in this Court, a taxpayer must properly raise that challenge during the CDP hearing. *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *see Giamelli v. Commissioner*, 129 T.C. 107, 113 (2007). "An issue is not properly raised if the taxpayer fails . . . to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to [do so]." Treas. Reg. § 301.6330-1(f)(2), Q&A-F3; *see Giamelli*, 129 T.C. at 112–16. In other words, the taxpayer must explain what she believes her correct tax liability to be and supply the SO with some evidence to support that position. *See Giamelli*, 129 T.C. at 112–16; *Fleming v. Commissioner*, T.C. Memo. 2017-155, 114 T.C.M. (CCH) 180, 182 (citing *McRae v. Commissioner*, T.C. Memo. 2015-132, 110 T.C.M. (CCH) 89, 91); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3.

**[\*6]**    Petitioner did not submit to Appeals any evidence to dispute the existence or amount of her 2019 tax liability, which stemmed from over-claimed withholding credits and a miscalculation of taxable Social Security benefits.  Rather, she referred to $7,141 in payments she had recently made and urged that these payments "settle[d] any taxes owed."  But a dispute as to whether a payment was properly credited to the taxpayer's account for a particular tax year is not a challenge to her underlying tax liability.  *See Melasky v. Commissioner*, 151 T.C. 89, 92 (2018), *aff'd*, 803 F. App'x 732 (5th Cir. 2020).  In any event, as the IRS had informed her in January 2020, the payments to which she referred had been credited against her outstanding tax liabilities for 2017 and 2018.[3]  The record includes a copy of her account transcript for 2019, which shows that none of the payments in question was applied against her 2019 liability.  In the absence of conflicting evidence, IRS account transcripts are sufficient to establish specific facts.  *See Triola v. Commissioner*, T.C. Memo. 2014-166, 108 T.C.M. (CCH) 185, 187 (finding account transcript sufficient to establish a balance); *Lenihan v. Commissioner*, T.C. Memo. 2006-259, 92 T.C.M. (CCH) 463, 470 (finding account transcript sufficient to establish nonpayment of estimated tax).

In sum, petitioner did not properly raise an underlying liability challenge to her 2019 tax liability during the CDP hearing.  Rather, she contended that her tax for 2019 had been paid.  That contention did not constitute a challenge to her underlying liability, and the contention in any event was incorrect.  We accordingly review the SO's action for abuse of discretion only.

III.    *Abuse of Discretion*

Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).  In deciding whether the SO abused his discretion, we consider whether he (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioner

---

[3] It is standard IRS practice to apply tax payments against the taxpayer's oldest outstanding liabilities, unless the taxpayer specifically designates the payments to a particular tax year.  *See Estate of Adell v. Commissioner*, T.C. Memo. 2014-89, 107 T.C.M. (CCH) 1463, 1466 (citing *Davis v. United States*, 961 F.2d 867, 878 (9th Cir. 1992)); *see also* Rev. Proc. 2002-26, § 2.02, 2002-1 C.B. 746, 746 (stating that if no designation is made, the payments will be allocated by the IRS to periods in the order of priority that it deems will serve its best interest).  Petitioner does not contend that she designated her payments of $7,141 to the 2019 tax year.

**[*7]** raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3). Our review of the record establishes that the SO properly discharged all of his responsibilities under these provisions.

The SO confirmed that all applicable legal and administrative requirements had been met. *See* § 6330(c)(1). He verified that the math error notice had been sent to petitioner's last known address and that her 2019 tax liability had been properly assessed.[4] He also verified that petitioner had a balance due for 2019, noting that the $7,141 of payments to which she referred had been credited against her 2017 and 2018 tax liabilities. The principal issue petitioner raised at the CDP hearing was her desire to challenge her liabilities for other years. But the SO correctly explained that the only year before him was 2019 and that (in any event) no levy or lien notice had yet been issued for the other years.

Petitioner asserts that the SO did not provide her with copies of the documents she requested, including the administrative file. But the SO's case activity record shows that he mailed her a copy of the administrative record and the other requested documents on January 12, 2023. The record includes a signed letter, dated January 12, 2023, confirming that fact.

Petitioner contends that Appeals abused its discretion by not offering her an FTF hearing. But as the SO's supervisor explained to her, an FTF hearing was unjustified once she disavowed any interest in a collection alternative for 2019. In any event, we have repeatedly held that section 6330 does not require an FTF hearing. *See Katz v. Commissioner*, 115 T.C. 329, 337–38 (2000); *see also* Treas. Reg. § 301.6330-1(d)(2), Q&A-D6 (stating that a proper hearing may occur by telephone, correspondence, or review of documents). An SO's denial of an FTF hearing does not constitute an abuse of discretion where (as

---

[4] The IRS may assess (and attempt to collect) tax in an amount greater than the amount reported on a return, without first issuing a notice of deficiency to the taxpayer, if that greater amount is based on mathematical or clerical errors found on the return. *See* § 6213(b)(1). If the taxpayer requests abatement of the assessment within 60 days of a notice of math error, the IRS must abate the assessment and use deficiency procedures to reassess. *See* § 6213(b)(2)(A). Petitioner received a math error notice and did not object to assessment of the adjustments therein. Thus, no statutory notice of deficiency was required for petitioner's 2019 liability, and the SO was not required to verify the mailing of such a notice.

**[\*8]** here) a taxpayer fails to present relevant evidence and neglects to provide requested documents. *See McRae*, 110 T.C.M. (CCH) at 92.

Despite indicating in her CDP hearing request that she was interested in an OIC, petitioner did not propose an OIC or any other specific collection alternative. Even if she had done so, she submitted none of the required forms or financial information. The SO could properly have rejected any proposed collection alternative on either ground. *See Gentile v. Commissioner*, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77 (no alternative proposed), *aff'd*, 592 F. App'x 824 (11th Cir. 2014); *Coleman v. Commissioner*, T.C. Memo. 2010-51, 99 T.C.M. (CCH) 1213, 1215 (no financial information provided), *aff'd*, 420 F. App'x 663 (8th Cir. 2011).

The record shows that the SO performed a balancing test, finding that the proposed levy action adequately balanced the need for efficient tax collection with petitioner's concerns. We conclude that the SO did not abuse his discretion in sustaining the proposed levy. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an OIC or an installment agreement, supported by the requisite financial information. Such an offer could cover her liabilities for multiple tax years.

To reflect the foregoing,

*An appropriate order and decision will be entered.*